UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JENNEFER ELLEN HANNA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | CASE NO. C11-0863-JCC-MAT<br><br>REPORT AND RECOMMENDATION |

Plaintiff Jennefer Ellen Hanna appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which partially denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1967 and was 42 years old on the date of the ALJ's decision. (Administrative Record ("AR") at 160-62.) She completed three years of college, and

previously worked as a registered nurse, truck-body builder, baker helper, and mail handler. (AR at 91, 186, 190-93.) On July 4, 2007, plaintiff filed an application for DIB, alleging disability beginning March 26, 2007, due to cerebral vasculitis stroke, memory loss, exhaustion, blinding headaches, problems with concentration, balance problems, and immune suppression. (AR at 20, 181.)

The Commissioner denied plaintiff's claim initially and on reconsideration. (AR at 101-03, 108-09.) Plaintiff requested a hearing, which took place on October 21, 2009. (AR at 33-94.) On September 26, 2010, the ALJ issued a partially favorable decision finding plaintiff disabled from March 26, 2007, through June 8, 2008. (AR at 29.) However, the ALJ found medical improvement occurred and the disability ended on June 9, 2008. *Id*.

Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council (AR at 1-6) making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On May 23, 2011, plaintiff timely filed the present action challenging the Commissioner's decision. (Dkt. No. 1.)

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). At step one, it must be determined whether a claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). The ALJ found plaintiff had not engaged in substantial gainful activity since

March 26, 2007, the alleged onset date. (AR at 23.)

At step two, it must be determined whether a claimant suffers from a severe impairment. 20 C.F.R. § 1520(c). The ALJ found plaintiff had the following severe impairments: status post cerebrovascular accidents, migraine headaches, and depression. *Id*.

Step three asks whether a claimant's impairments or combination of impairments meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. 20 C.F.R. § 1520(d). The ALJ found from March 26, 2007, through June 8, 2008, the period during which plaintiff was disabled, she did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR at 26.)

If the claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. 20 C.F.R.§§ 1520(e), (f). The ALJ found from March 26, 2007, through June 8, 2008, plaintiff had the RFC to perform sedentary work. (AR at 26.) She could lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk for at least two hours in an eight-hour workday; and sit for at least six hours in an eight-hour workday. *Id*. She could perform less than occasional handling and fingering with her left upper extremity due to left-sided weakness, and was limited to simple, routine work. *Id*. The ALJ found that due to headaches and the side effects of medications, plaintiff was unable to attend or persist in an ordinary work setting on a regular and continuous basis five hours a day eight days a week or an equivalent schedule. *Id*. The ALJ determined that plaintiff was unable to perform her past relevant work. (AR at 28.)

If the claimant is able to perform her past relevant work, she is not disabled; if the

opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). The ALJ found there were no jobs that existed in significant numbers in the national economy that plaintiff could perform. (AR at 28.) The ALJ concluded plaintiff was under a disability from March 26, 2007, through June 8, 2008. *Id*.

If the claimant is found disabled at any point in the sequential evaluation process, the Commissioner must also determine whether the disability continued through the date of the decision. In making this determination, the ALJ must follow an eight-step evaluation process. 20 C.F.R. § 404.1594(f). The continuing disability process is similar to the five-step sequential evaluation process, with additional questioning on whether there has been medical improvement and whether the medical improvement is related to the ability to work. *Compare* 20 C.F.R. § 404.1520, *with* 20 C.F.R. § 404.1594(f).

Under the eight-step continuing disability process, the ALJ must first determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If not, at step two, the ALJ must determine whether the claimant's impairments or combination of impairments meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1. 20 C.F.R. § 404.1594(f)(2). Step three asks whether there has been medical improvement as shown by a decrease in medical severity. 20 C.F.R. § 404.1594(f)(3). If there has been medical improvement, at step four, the ALJ must determine whether the medical improvement is related to the ability to work. 20 C.F.R. § 404.1594(f)(4). If there has been no medical improvement or the medical improvement is not related to the ability to work, at

step five, the ALJ must examine whether certain exceptions found in paragraphs (d) and (e) apply. 20 C.F.R. § 404.1594(f)(5). If medical improvement is related to the ability to work or if one of the exceptions in paragraph (d) applies, at step six, the ALJ must determine whether all of the claimant's impairments in combination are severe. 20 C.F.R. § 404.1594(f)(6). If the claimant's impairments are severe, the ALJ must assess RFC and determine at step seven whether the claimant has demonstrated an inability to perform past relevant work. 20 C.F.R. § 404.1594(f)(7). If the claimant is unable to perform past relevant work, the ALJ must determine at step eight whether, given the RFC and considering age, education, and past work experience, other work can be performed. 20 C.F.R. § 404.1594(f)(8).

In the present case, the ALJ applied the eight-step evaluation process to determine whether plaintiff's disability continued. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity. (AR at 23.) At step two, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR at 29.) At step three, the ALJ found that medical improvement had occurred as of June 9, 2008. *Id*. At step four, the ALJ found the medical improvement was related to plaintiff's ability to work. (AR at 36.) As a result, the ALJ proceeded to step six and found plaintiff's status post cerebrovascular accidents, migraine headaches, and depression were severe. (AR at 23.) At step seven, the ALJ assessed plaintiff's RFC and determined that plaintiff could not perform her past relevant work. (AR at 36.) Finally, at step eight, the ALJ determined that beginning on June 9, 2008, plaintiff was able to perform a significant number of jobs in the national economy, such as production assembler, housekeeper, and cashier. (AR at 36-37.) Accordingly, the ALJ concluded plaintiff's disability ended on June 9, 2008. (AR at

37.)

Plaintiff argues that the ALJ improperly rejected the opinions of treating physician Karyn Harkins, M.D., and medical expert William Debolt, M.D., and improperly applied the medical improvement standard. (Dkt. No. 15.) She requests remand for an award of benefits. *Id.* at 11. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. (Dkt. No. 16.) For the reasons described below, the Court agrees with the plaintiff.

A. <u>Evaluation of the Medical Evidence</u>

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Id.*

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

1. *Karyn Harkins, M.D.*

Karyn Harkins, M.D., has been plaintiff's primary care provider since November 2002. (AR at 693-94, 720-35.) On May 19, 2008, Dr. Harkins opined that plaintiff was unable to work from June 4, 2007, to June 8, 2008. (AR at 693-94.) She further opined that plaintiff could return to work after June 8, 2008, but was restricted to part-time work (20 to 30 hours per week) for three months. (AR at 694.)

The ALJ adopted Dr. Harkins' opinion that plaintiff was unable to work from June 4, 2007, through June 8, 2008, finding her opinion was "well supported by the longitudinal record

and numerous treatment notes." (AR at 27.) However, the ALJ rejected Dr. Harkins' opinion that plaintiff was restricted to part-time hours for three months, stating "[t]he evidence shows that the claimant was less limited than determined by Dr. Harkins, as after June 8, 2008, she was able to return to work on a full-time basis." (AR at 34.)

Plaintiff argues that the ALJ improperly rejected Dr. Harkins' opinion because her attempt to return to her former job as a nurse was ultimately an unsuccessful work attempt. The Court agrees with plaintiff that the ALJ did not provide legally sufficient reasons for rejecting Dr. Harkins' opinion. While plaintiff did return to work after Dr. Harkins released her to work in 2008, there is no evidence that she was able to sustain work. Rather, the record shows that plaintiff was discharged because she lacked the "cognitive ability" to perform the job. (AR at 289.) Her former manager Sue Brown reported that although plaintiff was provided "special supervision" and "extra help from co-workers," she had trouble relating to co-workers, dealing with normal stress at work, following directions, maintaining attention and concentration, and was frequently absent from work. (AR at 288-89.) Unsuccessful attempts to work may weigh in favor, not against, a finding of disability. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007).

Plaintiff also takes issue with the ALJ's rejection of a September 22, 2009, treatment note in which Dr. Harkins stated that plaintiff was working to get disability and she "concur[red] with her need, as she has some sig[nificant] deficits at this time, as well as recurrence risk." (AR at 723.) The ALJ gave Dr. Harkins' opinion "little weight," finding "[t]he record is devoid of evidence supporting this opinion; the claimant denied new symptoms other than headaches, which did not cause significant vocational limitations for 12 months."

(AR at 35.)

Plaintiff argues that the ALJ's rationale ignores the fact that the ALJ found her headaches were disabling in the first RFC assessment. (AR at 26.) Plaintiff contends "[t]he ALJ's statement is an admission that her headaches still existed and should have been included in the second residual functional capacity finding." (Dkt. No. 15 at 8.) Plaintiff also points to evidence in the record that supports Dr. Harkins' opinion, including a September 29, 2009, cerebral angiogram, which showed new findings likely representing "progressive sequela of multiple embolic type infarctions." (AR at 718.)

The Court agrees with plaintiff that the ALJ did not provide legally sufficient reasons for rejecting Dr. Harkins' opinion. The law requires that a treating doctor's opinion can only be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). The ALJ's finding that that the record is "devoid of evidence" that supports Dr. Harkins' opinion fails to account for plaintiff's ongoing complaints of migraine headaches which she found disabling prior to June 9, 2008. (AR at 677, 711, 720, 726, 727.) Although Dr. Harkins stated that plaintiff denied "any *new* symptoms," plaintiff's ongoing diagnoses and active problem list included mild cognitive impairment, memory loss, cerebral vascular accident (stroke), altered mental status, intractable migraines, and status post patent foramen ovale ("PSO") repair in 2009. (AR at 722.) The ALJ also ignores the evidence that on September 18, 2009, plaintiff was admitted to the Harborview Medical Center Neurology Intensive Care Unit with a new right occipital cerebrovascular accident after experiencing left sided weakness and headache. (AR at 700-710.) A cerebral angiogram taken on September 29, 2009, did not show any medical

improvement in her condition. (AR at 715-18.) Instead, the radiologist found, "[c]ompared to her prior exam, there has been interval increase in multiple perislenial pial collaterals feeding the colossal marginal arteries. . . . Progression of decreased arterial flow via the anterior and middle frontal lobe branches of the ACA bilaterally with associated enlargement of pia collaterals . . . . New irregular contour of the origins of the colossal marginal arteries bilaterally . . . ." (AR at 718.) The radiologist concluded these findings likely represented "progressive sequel of multiple embolic type infarctions." *Id*. This evidence calls into doubt the ALJ's conclusion that the record is devoid of evidence supporting Dr. Harkins' opinions.

Although the Commissioner offers several other reasons that could justify rejecting Dr. Harkins' opinions, the fact remains that these were not the reasons cited by the ALJ. (Dkt. No. 16 at 5-6.) The Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009).

Nevertheless, plaintiff fails to establish that the record supports crediting Dr. Harkins' opinions as true. The decision whether to remand for further proceedings or for an award of benefits is within the district court's discretion. *Harmon v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at 1179. However, where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id*. In this case remand is appropriate for the

REPORT AND RECOMMENDATION
PAGE -10

ALJ to remedy the above mentioned deficiencies and errors.

   2. *William Debolt, M.D.*

Plaintiff also argues that the ALJ improperly rejected the opinion of the medical expert, William L. Debolt, M.D., who testified at the hearing that plaintiff met Listing 12.02 for an organic brain disorder, and was unable to work after April 2008. (Dkt. No. 15 at 8-9.) The ALJ concluded that Dr. Debolt's opinion was entitled to "no weight" because it was "directly contradicted by objective testing." (AR at 35.) The ALJ noted that "Dr. Debolt asserted that his position was supported by findings on angiogram and MRI, however, he admitted that it was directly contradicted by objective psychological testing and he was unable to resolve this discrepancy." (AR at 35, 58-69.) The reasons given by the ALJ to discount Dr. Debolt's opinions were specific and legitimate and supported by the record.

As the ALJ pointed out, at a May 2008 evaluation by consultative examiner Kathleen S. Mayers, Ph.D., found "no evidence on memory testing of serious problems, and the [plaintiff's] judgment, reasoning, understanding, concentration and task persistence were good." (AR at 35, 592-97.)

> On mental status examination, memory was good to fair: the claimant was able to provide information from her history and was a good historian. Her digit span was 7 numbers in forward sequence and 5 numbers in reverse sequence. She was able to recall 3 out of 3 items immediately and 2 out of 3 items after a five-minute delay. Concentration was also good: the claimant performed serial sevens with only two errors, correctly performed all three stages of two different three stage directions, and correctly spelled the word "world" in forward and reverse sequence. Pace was average to rapid and task persistence was good. Psychological testing revealed that the claimant's memory indices ranged from the average level to the superior level.

(AR at 32.) Dr. Mayers opined plaintiff's "memory capabilities [were] good enough to permit

01 her to maintain employment." (AR at 596.) Dr. Mayers stated there was "no evidence on
02 memory testing of serious problems, indicating she has recovered well." (AR at 597).

The role of this Court is limited. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954. While it is perhaps possible to construe the medical evidence as urged by the plaintiff, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation. The ALJ did not err in his assessment of Dr. Debolt's opinions.

B. Medical Improvement

Although a claimant for Social Security disability benefits bears the burden of proving disability, once he or she "has been found to be disabled, however, a presumption of continuing disability arises in her favor." *Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985) (citing *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983)); *see also McCalmon v. Astrue*, 319 Fed. Appx. 658, 2009 WL 725928, *1* (9th Cir. 2009). Furthermore, the Commissioner "bears the burden of producing evidence sufficient to rebut this presumption of continuing disability." *Id*. The Commissioner may rebut the presumption of continuing disability with substantial evidence that demonstrates that there has been medical improvement in a claimant's condition that is related to the claimant's ability to do work. *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a). Medical improvement is related to the claimant's

ability to do work if there has been a decrease in the medical severity of an impairment *and* an increase in the functional capacity to do basic work activities. 20 C.F.R. § 404.1594(b)(3).

Plaintiff argues that the ALJ's finding of medical improvement as of June 9, 2008, is not supported by substantial evidence. She contends that the medical evidence shows she continued to have severe, intractable migraine headaches. (Dkt. No. 15 at 10.) The Commissioner responds that the ALJ properly determined that medical improvement had occurred. (Dkt. No. 16 at 8.) He contends that Dr. Harkins released plaintiff to work on June 9, 2008, which corresponded in time with Dr. Mayers psychological testing in May 2008, which showed no significant cognitive limitations.

As discussed above, however, the ALJ erred in her assessment of Dr. Harkins' opinion requiring remand. Accordingly, the ALJ's finding of medical improvement as of June 9, 2008, which was based, in part, on Dr. Harkins' opinion, is not supported by substantial evidence. After reevaluating Dr. Harkins' opinion, the ALJ should reconsider whether there has been medical improvement and, if so, whether the medical improvement is related to plaintiff's ability to work.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings not inconsistent with this Report and Recommendation.

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION
PAGE -13

DATED this 23rd day of January, 2012.

/s/ Mary Alice Theiler
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -14